UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CREST GLOBAL TECHNOLOGY, LLC, CREST GLOBAL TECHNOLOGY CAPITAL LLC, CREST GLOBAL TECHNOLOGY CAPITAL V LLC, CREST WISH LLC, CREST RIDE LLC, CREST ADKW LLC, and CREST CHIME LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>CROWN GLOBAL SECONDARIES V MASTER SCSP, CROWN GROWTH OPPORTUNITIES GLOBAL III S.C.S. RAIF, LGT CAPITAL INVEST (SC2) LIMITED, LIBERTY PE FUND SCSP SICAV RAIF (2019 SUB-FUND), KEVA CROWN SECONDARIES FUND L.P., FONDA, L.P., and SSP 2017 L.P.,<br><br>*Defendants*. | Case No.: 25-cv-00636<br><br>ECF CASE |

**FIRST AMENDED COMPLAINT**

Plaintiffs Crest Global Technology, LLC ("Crest Global"), Crest Global Technology Capital LLC ("DST IV Seller"), Crest Global Technology Capital V LLC ("DST V Seller"), Crest Wish LLC ("Crest Wish"), Crest Ride LLC ("DST XII Seller"), Crest ADKW LLC ("DST XIII Seller"), and Crest Chime LLC ("DST XXI Seller" and, together with Crest Global, DST IV Seller, DST V Seller, Crest Wish, DST XII Seller, and DST XIII Seller, the "Sellers" or "Crest"), by their undersigned attorneys, hereby bring this First Amended Complaint against Crown Global Secondaries V Master SCSp ("CGS V"), Crown Growth Opportunities Global III S.C.S. RAIF ("CGR G III"), LGT Capital Invest (SC2) Limited ("GIM"), Liberty PE Fund SCSp SICAV RAIF (2019 Sub-Fund) ("Liberty"), Keva Crown Secondaries Fund L.P. ("KCSF"),

Fonda, L.P. ("Fonda"), and SSP 2017 L.P. ("SSP" and, together with CGS V, CGR G III, GIM, Liberty, KCSF, and Fonda, the "Buyers" or "LGT") to recover for the breach of contract by LGT, and in support thereof respectfully allege as follows:

## NATURE OF THE ACTION

1. Crest brings this action to remedy LGT's straightforward breach of contract. In 2020, Crest agreed to sell to LGT certain investment assets (the "DST Assets") pursuant to an Agreement of Purchase and Sale, dated as of November 2, 2020 (the "Agreement")[1]. The sale was structured so that Crest received ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

2. To ensure there would be no dispute with respect to the timing and quantum of the future conditional payments, at the time of contracting, the parties prepared an agreed-upon Excel spreadsheet containing the formulas to be used to calculate the conditional payments, which was annexed to the Agreement. That Excel was populated with hypothetical illustrative examples to demonstrate how the calculation would be made using different assumptions.

3. In the first few years after the transaction closed, the conditions precedent to trigger a conditional payment were only met in two quarters. In each of those quarters, LGT calculated the conditional payments based on the parties' agreed-upon spreadsheet and formulas. Crest received payments totaling ▮▮▮▮▮▮ from those two conditional payments.

4. LGT's compliance with the Agreement and the parties' agreed-upon formula changed suddenly when it provided Crest with LGT's calculation of the conditional payment for

---

[1] Attached hereto as Exhibit 1.

the third quarter of 2024. Along with LGT's calculation of the payment, LGT informed Crest that it believed ▮▮▮▮ was owed to Crest.

5. When Crest reviewed LGT's calculation, however, Crest discovered that LGT had abandoned the parties' agreed-upon formula. Instead, in the cell on the spreadsheet that depicted the calculation of the conditional payment, LGT had intentionally deleted the formula agreed upon by the parties and deceptively inserted the ▮▮▮▮ that it claimed it owed Crest.

6. Had LGT used the proper formula, the conditional payment calculation would have resulted in a ▮▮▮▮ payment to Crest. This is not in dispute. LGT has admitted as much to Crest. But rather than pay Crest the ▮▮▮▮ it owes, LGT has sought to justify its breach of the Agreement by imposing an additional requirement on its payment obligations that is nowhere to be found in the Agreement.

7. One of the critical components that drives when conditional payments are due and the amount of such payments is the amount of cash distributions that LGT receives from the DST Assets. The formula the parties agreed to and annexed to the Agreement contemplates that ▮▮▮▮

▮▮▮▮

▮▮▮▮

8. For Q3 2024, however, LGT altered the payment formula and claimed that it was only required to ▮▮▮▮

▮▮▮▮ —as opposed to using the ▮▮▮▮

▮▮▮▮ The Agreement provides no support for LGT's argument, which is plainly contrary to the parties' agreed-upon formula annexed to the Agreement. LGT's refusal to remit the ▮▮▮▮ conditional payment to Crest is a clear breach of the Agreement.

3

9. Accordingly, and as described further below, Crest asserts claims against LGT for breach of the Agreement, breach of the implied covenant of good faith and faith dealing, and unjust enrichment. To address the harm caused by LGT's misconduct, Crest seeks a declaration, compensatory damages, as well as any other just relief.

## PARTIES

10. Plaintiff Crest Global Technology, LLC is a Delaware limited liability company with its principal place of business located at 600 Travis, Suite 6800, Houston, TX 77002.

11. Plaintiff Crest Global Technology Capital LLC is a Delaware limited liability company with its principal place of business located at 600 Travis, Suite 6800, Houston, TX 77002.

12. Plaintiff Crest Global Technology Capital V LLC is a Delaware limited liability company with its principal place of business located at 600 Travis, Suite 6800, Houston, TX 77002.

13. Plaintiff Crest Wish LLC is a Delaware limited liability company with its principal place of business located at 600 Travis, Suite 6800, Houston, TX 77002.

14. Plaintiff Crest Ride LLC is a Delaware limited liability company with its principal place of business located at 600 Travis, Suite 6800, Houston, TX 77002.

15. Plaintiff Crest ADKW LLC is a Delaware limited liability company with its principal place of business located at 600 Travis, Suite 6800, Houston, TX 77002.

16. Plaintiff Crest Chime LLC is a Delaware limited liability company with its principal place of business located at 600 Travis, Suite 6800, Houston, TX 77002.

17. Defendant Crown Global Secondaries V Master SCSp is a Luxembourg special limited partnership located at 60 Avenue J.F. Kennedy, L-1855 Luxembourg, Luxembourg.

18. Defendant Crown Growth Opportunities Global III S.C.S. RAIF is a Luxembourg reserved alternative investment fund located at 8 Rue Lou Hemmer, 1748 Luxembourg, Luxembourg.

19. Defendant LGT Capital Invest (SC2) Limited is a Cayman Islands limited liability company located at Grand Pavilion Commercial Centre, 1st Floor, 802 West Bay Road, P.O. Box 31855, George Town, Grand Cayman, KY1-1207, Cayman Islands.

20. Defendant Liberty PE Fund SCSp SICAV RAIF (2019 Sub-Fund) is a Luxembourg société d'investissement à capital variable reserved alternative investment fund located at 8 Rue Lou Hemmer, 1748 Luxembourg, Luxembourg.

21. Defendant Keva Crown Secondaries Fund L.P. is a Cayman Islands limited partnership located at Grand Pavilion Commercial Centre, 1st Floor, 802 West Bay Road, P.O. Box 31855, KY1-1207 George Town, Grand Cayman, Cayman Islands.

22. Defendant Fonda, L.P. is a New York limited partnership located at 1133 Avenue of the Americas, 30th Floor, New York, NY 10036.

23. Defendant SSP 2017 L.P. is a New York limited partnership located at 1133 Avenue of the Americas, 30th Floor, New York, NY 10036.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Crest seeks damages in excess of $75,000.

25. Certain claims herein arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court may declare the rights and other legal relations of the parties under 28 U.S.C. §§ 2201 and 2202 because this is a case of actual controversy within the Court's jurisdiction.

26. The Agreement includes a forum selection clause requiring the parties to ███████████████████████████████████████████████████



27. Each party also agreed to ████████████████████████████████ ████████████████████████████████ Accordingly, venue in this Court is proper, and this Court has personal jurisdiction over the parties.

## FACTUAL BACKGROUND

### A. The Parties

28. The Crest plaintiffs are affiliates of Crest Investment Company, which manages a diverse portfolio of investments in the media and entertainment, technology, hospitality, real estate, mining, and energy sectors.

29. The LGT defendants are affiliates of LGT Capital Partners, which describes itself as a "leading global specialist in alternative investing."

### B. LGT's Negotiations to Acquire the DST Assets

30. In October 2020, LGT and Crest began to discuss LGT's potential acquisition of the DST Assets from Crest.

31. On October 14, 2020, LGT proposed that it acquire the DST Assets at a purchase price based on the net asset value ("NAV") of the DST Assets, ████████████████████ ████████████████████████████████████████████████████ ██████████████████████████

6

32. The contemplated earn-out structure would require ███████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████

33. After Crest's receipt of LGT's offer, the parties continued to negotiate the terms thereof as well as the definitive documentation to effectuate the transaction.

**C.    The Parties Enter into the Agreement**

34. On November 2, 2020, the parties entered into the Agreement.

35. The agreed-upon purchase price was structured consistently with LGT's original proposal.

36. Pursuant to Section 4(a) of the Agreement, Crest was to receive ███████
████████████████████████████████████████████████████████████████
█████████████████████████████████████████████

37. Consistent with LGT's proposal, the Upfront Purchase Price was defined to mean ████████████████████████████████████████████████████████

38. Likewise, the Conditional Purchase Price was defined to mean the ████████
██████████████████

39. The Purchase Price for the DST Assets was ████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████ And the Conditional Purchase Price could be ████████
██████

7

40. Section 4 of the Agreement, however, specified that the Conditional Purchase Price would only be paid once two enumerated conditions were met: ███

███

███

███

███

███

███

███

41. Section 4 of the Agreement further specified that ███

███ ███

███

42. Because of the complicated nature of the earn-out structure of the Conditional Purchase Price, Crest and LGT negotiated a spreadsheet containing the formulas to be used to calculate the Conditional Purchase Price, which was annexed to the Agreement as Exhibit 4b. The Agreement itself states that Exhibit 4b ███

███

43. To ensure that Crest received sufficient information to know whether the conditions for its receipt of the Conditional Purchase Price had been satisfied, the Agreement

---

[2] The Agreement defines Distributions ███

███

███████████████████████████████████████████████████

███████████████████████████████████████████

44.    ██████████████████████████████████████████

███████████████████████████████████████████

██

**D.    After the Transaction Closes, LGT Initially Follows the Agreed-Upon Conditional Purchase Formula**

45.    In the years immediately following the closing of the transaction, LGT complied with its obligations under the Agreement. At the end of each quarter, LGT provided Crest the required information, including ████████████████████████████

46.    For nearly every quarter up until Q3 2024, no Conditional Purchase Price was due to be paid to Crest.

47.    There were, however, two exceptions where the requisite conditions precedent for the Conditional Purchase Price were satisfied. For Q3 2021, LGT followed the agreed-upon formula and remitted a ████████ payment to Crest. And for Q4 2021, LGT again followed the agreed-upon formula and remitted a ████████ payment to Crest.

48.    In the quarters that followed, the conditions precedent for the Conditional Purchase Price were not satisfied and no portion of the Conditional Purchase Price was required to be paid.

**E.    LGT Suddenly Stops Following the Conditional Purchase Price Formula**

49.    LGT's compliance with the Agreement ceased in connection with the calculation for the Conditional Purchase Price for Q3 2024.

9

50. On December 3, 2024, LGT provided Crest with the requisite information required by the Agreement and LGT's calculation of the Conditional Purchase Price. LGT informed Crest that it believed it owed Crest ▓▓▓▓.

51. When Crest and its advisors reviewed the documentation supporting the calculation of the Conditional Purchase Price, including the spreadsheet containing the calculation itself, Crest realized that LGT had abandoned the parties' agreed-upon formula. Had LGT followed the formula, it would have owed Crest ▓▓▓▓.

52. But instead, LGT intentionally deleted the formula agreed upon by the parties and deceptively inserted the ▓▓▓▓ that LGT claimed it owed into the cell that depicted the calculation of the Conditional Purchase Price.

53. The parties held a series of discussions following LGT's delivery of the Conditional Purchase Price calculation. During those discussions, LGT confirmed that had it followed the agreed-upon formula in the agreed-upon spreadsheet for the calculation of the Conditional Purchase Price that resulting calculation would have resulted in a ▓▓▓▓ payment obligation to Crest. There is thus no dispute with respect to the actual calculation of the Conditional Purchase Price. Rather, the dispute turns on the parties' competing interpretations of the Agreement.

54. Indeed, LGT claimed that it did not owe Crest ▓▓▓▓, arguing that it only owed Crest ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. That additional obligation—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—is nowhere to be found in the Agreement.

55. Section 4(b)(ii) of the Agreement does contemplate ██████████ ████████████████████████████████████ but it does ***not*** ████████ ████████████████████████████████████████████████████████████ ████████████████████████ Rather, the parties agreed that ████████████ ████████████████████████████████████████████████████. This is clear from Exhibit 4b to the Agreement (excerpted below), which shows ██████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

11



56. Calculating the Conditional Purchase Price using ▮▮▮▮▮▮▮▮ is not only consistent with the Agreement, but also consistent with the parties' course of performance. In the previous two quarters in which a Conditional Purchase Price payment was due, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

57. And calculating the Conditional Purchase Price using ▮▮▮▮▮▮▮▮ is consistent with the parties' bargain. The purpose of the Conditional Purchase Price was to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That defies logic.

58. LGT's sudden change in the calculation of the Conditional Purchase Price is a clear breach of the Agreement. It owes Crest ▮▮▮▮▮▮▮▮ at the time of this filing.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT

59. Crest repeats and incorporates by reference the allegations of Paragraphs 1-58 as though fully set forth herein.

60. A justiciable controversy exists between Crest and LGT with respect to LGT's obligation to pay Crest the Conditional Purchase Price consistent with the Agreement.

61. Pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Crest requests a declaration that LGT is obligated to pay Crest at least ███████ and/or any other appropriate declaration so as to settle the legal relationship, rights, and obligations between the parties.

62. The issue is ripe for judicial decision and if decision is withheld, Crest's economic interests will continue to suffer. Judgment would clarify the legal issues involved, finalize the controversy, and offer relief from uncertainty.

### COUNT II
### BREACH OF THE AGREEMENT

63. Crest repeats and incorporates by reference the allegations of Paragraphs 1-62 as though fully set forth herein.

64. The Agreement constitutes an enforceable agreement that imposes upon LGT certain obligations, including that LGT pay Crest the Conditional Purchase Price so long as certain conditions enumerated in the Agreement are satisfied.

65. LGT has breached the Agreement by imposing an extracontractual condition on its obligation to the pay the Conditional Purchase Price.

66. As a direct and proximate result of LGT's breach of the Agreement, Crest has been injured in an amount to be determined at trial, but not less than ███████.

13

## COUNT III
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

67. Crest repeats and incorporates by reference the allegations of Paragraphs 1-66 as though fully set forth herein.

68. The Agreement constitutes an enforceable agreement that requires LGT to pay Crest the Conditional Purchase Price when certain enumerated conditions are satisfied.

69. The Agreement contains an implied covenant of good faith and fair dealing. This covenant includes, but is not limited to, the duty to act honestly, promptly, and fairly so as to not deprive Crest the fruits of its bargain.

70. Crest has complied with all terms, conditions, and prerequisites set forth in the Agreement, including the implied covenant of good faith and fair dealing.

71. LGT has breached the implied covenant of good faith and fair dealing by acting in bad faith and engaging in obstructionist tactics, including attempting to impose additional conditions precedent on the payment of the Conditional Purchase Price that do not appear in the Agreement.

72. As a direct and proximate result of LGT's bad-faith breach of the Agreement, Crest has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial, but not less than ███████.

## COUNT IV
## UNJUST ENRICHMENT

73. Crest repeats and incorporates by reference the allegations of Paragraphs 1-72 as though fully set forth herein.

74. In the alternative, LGT has been unjustly enriched by its refusal to remit the Conditional Purchase Price to Crest.

75.     Crest conferred a tangible economic benefit upon LGT by contracting with LGT to provide the DST Assets. By engaging in the conduct described above, LGT has unjustly enriched itself at the expense of, and to the detriment of, Crest. Specifically, LGT retained funds that should have been paid to Crest.

76.     LGT has thus received a benefit far beyond what was contemplated by the parties, at the expense of Crest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A.     Crest respectfully requests a judgment declaring that, under the Agreement, LGT is obligated to pay Crest the Conditional Purchase Price consistent with the terms of the Agreement.

B.     Damages in an amount to be proven at trial, but not less than ███████.

C.     Reasonable attorneys' fees, costs, expert fees, and litigation expenses.

D.     Pre- and post-judgment interest.

E.     Such further and other relief as the Court may deem just, equitable, or appropriate.

Dated: January 27, 2025

                                      KIRKLAND & ELLIS

                                      *s/ Jay P. Lefkowitz*

Jay P. Lefkowitz, P.C.
Jeffrey R. Goldfine
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
lefkowitz@kirkland.com
jeffrey.goldfine@kirkland.com

*Counsel for Plaintiffs*